# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   *Plaintiff*,<br><br>v.<br><br>NOVELIS INC.<br><br>and<br><br>ALERIS CORPORATION,<br><br>   *Defendants*. | Case.: 1:19-cv-02033-CAB<br><br>**PUBLIC VERSION** |

## [PROPOSED] MODIFIED HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, as follows:

### I. BACKGROUND AND OBJECTIVES

1. Plaintiff United States filed a complaint on September 4, 2019, alleging that Defendant Novelis Inc.'s ("Novelis") acquisition of Defendant Aleris Corporation ("Aleris") would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, because it likely would substantially lessen competition in the development, manufacture, and sale of aluminum automotive body sheet ("ABS") to customers in North America.

2. Prior to the filing of the Complaint, the parties entered into an arbitration agreement ("Arbitration Agreement"). (Dkt. 11-1). In the Arbitration Agreement, the parties agreed to submit their dispute to binding arbitration on a single dispositive issue: whether aluminum ABS constituted a relevant antitrust product market. Under the Arbitration

1

Agreement, the parties agreed that if the United States prevailed, Defendants would have to divest Aleris's Lewisport, Kentucky facility to a buyer acceptable to the United States. (Dkt. 11-1 at ¶ 4(c)). If the Defendants prevailed, the United States would dismiss the lawsuit.

3.  As part of the Arbitration Agreement, the parties also agreed that divestiture of a 50 percent interest in Novelis's ▮▮▮▮▮▮▮▮▮ facility to an independent competitor would also resolve the violations alleged by the United States. Acceptance of this divestiture as a remedy was contingent, however, on Defendants completing the divestiture prior to the commencement of the arbitration hearing. Thus, under the Arbitration Agreement, the parties agreed that either of two potential divestiture asset packages would resolve the violations alleged by the United States: 1) a divestiture of 50 percent of Novelis's ▮▮▮▮▮▮▮▮▮ facility; or 2) a divestiture of Aleris's Lewisport, Kentucky facility. (Dkt. 11-1 at ¶¶ 3-4).

4.  On January 9, 2020, the Court entered a Hold Separate Stipulation and Order (Dkt. 41), requiring that both of the two potential divestiture asset packages be maintained and held separate from Defendants' other operations pending a final decision by the parties on which assets would be divested.

5.  On January 21, 2020, the Court ordered a stay of proceedings and referred this matter to binding arbitration (Dkt. 44), pursuant to the Administrative Dispute Resolution Act of 1996 (5 U.S.C. § 571, *et seq.*) and in accordance with the parties' agreement.

6.  Defendants did not divest 50 percent of Novelis's ▮▮▮▮▮▮▮▮▮ facility prior to the arbitration hearing commencing on February 12, 2020.

7.  On March 9, 2020, the United States prevailed in the arbitration when the arbitrator determined aluminum ABS to be a relevant antitrust product market.

8. As permitted under the terms of the Arbitration Agreement (Dkt. 11-1 at ¶ 5) and the Hold Separate Stipulation and Order entered by the Court on January 9, 2020 (Dkt. 41), the Defendants consummated their transaction on April 14, 2020.

9. The United States has now filed the attached proposed Final Judgment requiring Defendants to divest Aleris's Lewisport, Kentucky facility to a buyer acceptable to the United States. The proposed Final Judgment would ensure Defendants' prompt divestiture of the Divestiture Assets for the purpose of establishing a viable competitor in the development, manufacture and sale of aluminum ABS in order to remedy the effects the United States alleges would otherwise result from Novelis's acquisition of Aleris.

10. The parties also now seek entry of this Modified Hold Separate Stipulation and Order ("Modified Stipulation and Order"), which will supersede the January 9, 2020 Order (Dkt. 41). This Modified Stipulation and Order will govern the Defendants' conduct in the period before the proposed Final Judgment becomes final.

11. Because a proposed Final Judgment was not filed at the time of the January 9, 2020 Order (Dkt. 41), the January 9, 2020 Order did not reference entry of or compliance with the proposed Final Judgment. Now with the filing of the attached proposed Final Judgment, the Modified Stipulation and Order incorporates provisions for entry of and compliance with the proposed Final judgment.

12. Additionally, the January 9, 2020 Hold Separate Stipulation and Order, required the Defendants to preserve, maintain, and hold separate tangible and intangible assets related to both of the two potential divestiture asset packages – Novelis's ▮▮▮▮▮▮▮▮ facility and Aleris's Lewisport, Kentucky facility. The United States now seeks, and Defendants have agreed to, divestiture of the Lewisport, Kentucky facility. The ▮▮▮▮▮▮▮▮ facility thus no

3

longer needs to be held separate. This Modified Stipulation and Order therefore releases Novelis of its obligation to hold the ▮▮▮▮ assets separate.

13. With respect to the Aleris Lewisport, Kentucky facility, the Modified Stipulation and Order will ensure that, prior to divestiture, those assets will continue to be held entirely separate, distinct, and apart from those of Defendants' other operations and that Defendants will continue to preserve and maintain those assets.

14. WHEREFORE, for good cause shown, it is hereby ORDERED:

## II. DEFINITIONS

For purposes of this Modified Stipulation and Order, the following definitions shall apply:

A. "Aluminum ABS" means aluminum automotive body sheet, a rolled aluminum sheet product used for automotive applications.

B. "Novelis" means Defendant Novelis Inc., a Canadian corporation with its headquarters in Atlanta, Georgia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

C. "Aleris" means Defendant Aleris Corporation, a Delaware corporation with its headquarters in Cleveland, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D. "Defendants" means Novelis and Aleris.

E. "Divestiture Assets" means:

    1. All of Defendants' rights, title, and interests, wherever located, in and relating to the manufacturing and support facilities located at:

4

  a. 1372 State Route 1957, Lewisport, Kentucky 42351 (the "Lewisport Rolling Mill"); and

  b. 1450 East Avis Drive, Madison Heights, Michigan 48071 (the "Innovation Center");

  c. All tangible assets, wherever located, related to or used in connection with the operation of the Lewisport Rolling Mill, including, but not limited to: research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and all other tangible property and assets; all licenses, permits, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records; and

  d. All intangible assets related to or used in connection with the operation of the Lewisport Rolling Mill, including, but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks; trade names; service marks; service names; technical information; computer software (including software developed by third parties) and related documentation; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials; specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and

simulation capability; all manuals and technical information Aleris provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

F. "Relevant Employees" means all full-time, part-time, or contract employees who supported or whose job responsibilities related to the Divestiture Assets at any time between July 26, 2018 and the date on which the Divestiture Assets are divested to an Acquirer, including but not limited to all employees located at the Lewisport Rolling Mill, the Innovation Center, and all other personnel involved in the design, manufacture, or sale of any products produced at the Lewisport Rolling Mill, including engineering and support employees, wherever such employees are located.

G. "Transaction" means the acquisition of Aleris by Novelis.

### III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue for this action is proper in the United States District Court for the Northern District of Ohio.

### IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A. The parties stipulate that a Final Judgment in the form attached hereto as **Exhibit A** may be filed with and entered by the Court, upon the motion of any party or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act (15 U.S.C. § 16) ("APPA"), and without further notice to any party or other proceedings, provided that the United States has not withdrawn its consent, which it may do at

6

any time before the entry of the proposed Final Judgment by serving notice on Defendants and by filing that notice with the Court. Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which will be drafted by the United States in its sole discretion. The publication must be arranged no later than three (3) business days after Defendants' receipt from the United States of the text of the notice and the identity of the newspaper within which the publication must be made. Defendants must promptly send to the United States: (1) confirmation that publication of the newspaper notice has been arranged; and (2) the certification of the publication prepared by the newspaper within which the notice was published.

  B. Defendants must abide by and comply with the provisions of the proposed Final Judgment, pending the Court's entry of the proposed Final Judgment, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and must, from the date of the signing of this Modified Stipulation and Order by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States will have the full rights and enforcement powers set forth in the proposed Final Judgment as though the same were in full force and effect as the final order of the Court.

  C. This Modified Stipulation and Order applies with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

  D. If (1) the United States has withdrawn its consent, as provided in Paragraph IV(A) above; or (2) the proposed Final Judgment is not entered, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment,

then the parties are released from all further obligations under this Modified Stipulation and Order, and the making of this Modified Stipulation and Order shall be without prejudice to any party in this or any other proceeding.

E.  Defendants represent that the divestiture ordered by the proposed Final Judgment can and will be made, and that Defendants will not later raise a claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.  HOLD SEPARATE AND PRESERVATION OBLIGATIONS

Until the divestiture required by the proposed Final Judgment has been accomplished:

A.  Defendants must preserve, maintain, and continue to operate each of the Divestiture Assets as an independent, ongoing, economically viable competitive business, with management, sales, and operations of the Divestiture Assets held entirely separate, distinct, and apart from those of Defendants' other operations.  Defendants must not coordinate their production, marketing, or terms of sale of any products with those produced or sold by or under the Divestiture Assets. Within twenty (20) days after the entry of this Modified Stipulation and Order, Defendants must inform the United States of the steps they have taken to comply with this Modified Stipulation and Order.

B.  Defendants shall take all steps necessary to ensure that (1) the Divestiture Assets will be maintained and operated as an independent, ongoing, economically viable and active competitor in the development, manufacture, and sale of Aluminum ABS (2) management of the Divestiture Assets will not be influenced by Novelis; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning production,

8

distribution or sales of products by or under the Divestiture Assets will be kept separate and apart from Novelis's other operations.

C. Defendants must maintain at 2019, or previously approved levels for 2020, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Assets.

D. Defendants shall provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Assets as an economically viable and competitive, ongoing business, consistent with the requirements of Paragraphs A and B of this Section V.

E. Defendants shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than current capacity and sales, and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

F. Defendants shall not, except as part of any divestiture approved by the United States in accordance with the terms of the proposed Final Judgment remove sell, lease, assign, transfer, pledge or otherwise dispose of any of the Divestiture Assets, other than pledges in favor of Standard Chartered Bank and Wells Fargo Bank, National Association under Novelis's existing credit agreements dated January 10, 2017 and October 6, 2014, respectively, in each case as amended.

G. Defendants must maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of the Divestiture Assets.

H. Defendants must take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

I. Defendants must maintain the working conditions, staffing levels, and work force training and expertise associated with the Divestiture Assets. Relevant Employees must not be transferred or reassigned except for transfer bids initiated by employees pursuant to Defendants' regular, established job posting policy. Defendants must provide the United States with ten (10) calendar days' notice of the transfer of Relevant Employees. Upon objection by the United States to such transfer, Relevant Employees may not be transferred or reassigned. Defendants must use all reasonable efforts, including by providing financial incentives, to encourage Relevant Employees to continue in the positions held as of December 23, 2019, the date of the signing of the Hold Separate Stipulation and Order by the United States and Defendants; however, financial incentives may not be structured so as to disincentivize employees from accepting employment with an Acquirer.

J. Defendants must appoint a person or persons to oversee the Divestiture Assets, and who will be responsible for Defendants' compliance with this Section V. This person will have complete managerial responsibility for the Divestiture Assets, subject to the provisions of the Final Judgment. In the event such person is unable to perform his or her duties, Defendants must appoint, subject to the approval of the United States, a replacement within ten (10) working days. Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States will appoint a replacement.

K. Defendants must take no action that would interfere with the ability of any trustee appointed pursuant to the proposed Final Judgment to complete the divestiture pursuant to the proposed Final Judgment to an Acquirer acceptable to the United States.

## VI. DURATION OF HOLD SEPARATE AND ASSET PRESERVATION OBLIGATIONS

Defendants' obligations under Section V of this Modified Stipulation and Order must remain in effect until: (1) consummation of the divestiture required by the proposed Final Judgment; or (2) further order of the Court. If the United States voluntarily dismisses the Complaint in this matter, Defendants are released from all further obligations under this Modified Stipulation and Order.

DATED: **May 12, 2020**

Respectfully submitted,

| **FOR PLAINTIFF UNITED STATES OF AMERICA** | **FOR DEFENDANTS NOVELIS INC. AND ALERIS CORPORATION** |
|---|---|
| /s/ Samer M. Musallam | /s/ Farrell J. Malone |
| Samer M. Musallam (Ohio #0078472) | Farrell J. Malone (*pro hac vice*) |
| U.S. Department of Justice, Antitrust Division | Latham & Watkins LLP |
| 450 Fifth Street, NW, Suite 8700 | 555 11th Street, NW |
| Washington, DC 20001 | Washington, DC 20004 |
| (202) 598-2990 | (202) 637-2200 |
| Samer.Musallam@usdoj.gov | farrell.malone@lw.com |

## ORDER

IT IS SO ORDERED by this Court, this _____ day of _____, 2020.

_____
United States District Judge