## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　*Plaintiff*,<br><br>v.<br><br>NOVELIS INC.<br><br>and<br><br>ALERIS CORPORATION,<br><br>　　　　　　*Defendants*. | Case.: 1:19-cv-02033-CAB |

## <u>FINAL JUDGMENT</u>

WHEREAS, Plaintiff, United States of America, filed its complaint on September 4, 2019, and the United States and Defendants, Novelis Inc. and Aleris Corporation, by their respective attorneys, have consented to entry of this Final Judgment, without this Final Judgment constituting any evidence against or admission by a party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, Defendants agree to make a divestiture for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants represent that the divestiture and other relief required by this Final Judgment can and will be made and that Defendants will not later raise a claim of hardship or difficulty as grounds for asking the Court to modify any provision of this Final Judgment;

NOW THEREFORE, upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I.    **JURISDICTION**

The Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended (15 U.S.C. § 18).

## II.    **DEFINITIONS**

As used in this Final Judgment:

A.    "Acquirer" means the entity to whom Defendants divest the Divestiture Assets.

B.    "Aluminum ABS" means aluminum automotive body sheet, a rolled aluminum sheet product used for automotive applications.

C.    "Novelis" means Defendant Novelis Inc., a Canadian corporation with its headquarters in Atlanta, Georgia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

D.    "Aleris" means Defendant Aleris Corporation, a Delaware corporation with its headquarters in Cleveland, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

2

E.    "Divestiture Assets" means:

    1.    All of Defendants' rights, title, and interests, wherever located, in and relating to the manufacturing and support facilities located at:

        a. 1372 State Route 1957, Lewisport, Kentucky 42351 (the "Lewisport Rolling Mill"); and

        b. 1450 East Avis Drive, Madison Heights, Michigan 48071 (the "Innovation Center");

    2.    All tangible assets, wherever located, related to or used in connection with the operation of the Lewisport Rolling Mill, including, but not limited to: research and development activities; all manufacturing equipment, tooling and fixed assets, personal property, inventory, office furniture, materials, supplies, and all other tangible property and assets; all licenses, permits, and authorizations issued by any governmental organization; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records; and

    3.    All intangible assets related to or used in connection with the operation of the Lewisport Rolling Mill, including, but not limited to: all patents; licenses and sublicenses; intellectual property; copyrights; trademarks; trade names; service marks; service names; technical information; computer software (including software developed by third parties) and related documentation; know-how; trade secrets; drawings; blueprints; designs; design protocols; specifications for materials;

3

specifications for parts and devices; safety procedures for the handling of materials and substances; quality assurance and control procedures; design tools and simulation capability; all manuals and technical information Aleris provides to its own employees, customers, suppliers, agents, or licensees; and all research data concerning historic and current research and development efforts, including, but not limited to, designs of experiments, and the results of successful and unsuccessful designs and experiments.

F.      "Operational" means capable of operating at full capacity, and in a state of (i) current operation or (ii) readiness to operate.

G.      "Regulatory Approvals" means (i) any approvals or clearances pursuant to filings with the Committee on Foreign Investment in the United States ("CFIUS"), or under antitrust or competition laws required for the Transaction to proceed; and (ii) any approvals or clearances pursuant to filings with CFIUS, or under antitrust, competition, or other U.S. or international laws, or any local regulatory approvals by the City of Lewisport, Kentucky or the City of Madison Heights, Michigan, required for Acquirer's acquisition of the Divestiture Assets to proceed.

H.      "Relevant Employees" means all full-time, part-time, or contract employees who supported or whose job responsibilities related to the Divestiture Assets at any time between July 26, 2018 and the date on which the Divestiture Assets are divested to an Acquirer, including but not limited to all employees located at the Lewisport Rolling Mill, the Innovation Center, and all other personnel involved in the design, manufacture, or sale of any products produced at the

Lewisport Rolling Mill, including engineering and support employees, wherever such employees are located.

I.    "Transaction" means the proposed acquisition of Aleris by Novelis.

### III.    APPLICABILITY

A.    This Final Judgment applies to Novelis and Aleris, as defined above, and all other persons, in active concert or participation with any Defendant, who receive actual notice of this Final Judgment.

B.    If, prior to complying with Section IV and Section V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, Defendants must require the purchaser to be bound by the provisions of this Final Judgment. Defendants need not obtain such an agreement from Acquirer.

### IV.    DIVESTITURE

A.    Defendants are ordered and directed, within the later of ninety (90) calendar days after the Court's entry of the Order Stipulating to Modification of the Order to Hold Separate Assets in this matter, or thirty (30) calendar days after all Regulatory Approvals have been received, to divest the Divestiture Assets in a manner consistent with this Final Judgment to an Acquirer acceptable to the United States, in its sole discretion. The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed one hundred eighty (180) calendar days in total, and will notify the Court of any extensions. Defendants agree to use their best efforts to divest the Divestiture Assets as expeditiously as possible.

B.     In accomplishing the divestiture ordered by this Final Judgment, Defendants promptly must make known, by usual and customary means, the availability of the Divestiture Assets. Defendants must inform any person making an inquiry regarding a possible purchase of the Divestiture Assets that the Divestiture Assets are being divested in accordance with this Final Judgment and must provide that person with a copy of this Final Judgment.  Defendants must offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the Divestiture Assets customarily provided in a due-diligence process; provided, however, that Defendants need not provide information or documents subject to the attorney-client privilege or work-product doctrine.  Defendants must make this information available to the United States at the same time that the information is made available to any other person.

C.     Defendants must cooperate with and assist Acquirer in identifying and hiring all Relevant Employees, including:

1.     Within ten (10) business days following receipt of a request by the Acquirer of the Divestiture Assets or the United States, Defendants must identify all Relevant Employees to Acquirer and the United States, including by providing organization charts covering all Relevant Employees.

2.     Within ten (10) business days following receipt of a request by Acquirer or the United States, Defendants must provide to Acquirer and the United States the following additional information related to Relevant Employees:  name; job title; current salary and benefits including most recent bonus paid, aggregate annual compensation, current target or guaranteed bonus, if any, and any other payments due to or promises made to the employee; descriptions of

6

reporting relationships,  past experience, responsibilities,  and training and educational histories;  lists of all certifications;  and all job performance evaluations.  If Defendants are barred by any applicable laws from providing  any of this information,  within ten (10) business days following receipt of the request, Defendants must provide the requested information  to the full extent permitted by law and also must provide a written explanation of Defendants' inability  to provide the remaining  information.

        3.      At the request of Acquirer, Defendants must promptly  make Relevant Employees  available  for private interviews  with Acquirer during  normal business hours at a mutually  agreeable location.

        4.      Defendants must not interfere with any efforts by Acquirer to employ  any Relevant Employees.  Interference includes  but is not limited  to offering to increase the salary or improve  the benefits of Relevant Employees  unless the offer is part of a company-wide  increase in salary or benefits that was announced  prior to July 26, 2018,  or has been approved by the United States, in its sole discretion.  Defendants' obligations  under this paragraph will expire six (6) months  after the divestiture  of the Divestiture Assets pursuant to this Final Judgment.

        5.      For Relevant Employees  who elect employment  with Acquirer within  six (6) months of the date on which the Divestiture  Assets are divested to Acquirer, Defendants must waive all non-compete and non-disclosure  agreements, vest all unvested pension and other equity rights, and provide  all benefits that those Relevant Employees  otherwise would have been provided  had the Relevant Employees  continued employment  with Defendants, including  but not limited  to any retention bonuses or payments.  Defendants may maintain  reasonable restrictions on disclosure by Relevant Employees  of Defendants' proprietary non-public  information  that is

unrelated to the Divestiture Assets and not otherwise required to be disclosed by this Final Judgment.

      6.    For a period of twelve (12) months from the date on which the Divestiture Assets are divested to Acquirer, Defendants may not solicit to rehire Relevant Employees who were hired by Acquirer within six (6) months of the date on which the Divestiture Assets are divested to Acquirer unless (a) an individual is terminated or laid off by Acquirer or (b) Acquirer agrees in writing that Defendants may solicit to rehire that individual.  Nothing in this paragraph prohibits Defendants from advertising employment openings using general solicitations or advertisements and hiring individuals who respond to such solicitations or advertisements.

D.    Defendants must permit prospective Acquirers of the Divestiture Assets to have reasonable access to make inspections of the physical facilities and access to all environmental, zoning, and other permit documents and information, and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

E.    Defendants must warrant to Acquirer that each asset to be divested will be Operational and without material defect on the date of sale.

F.    Defendants must not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

G.    Defendants must make best efforts to assign, subcontract, or otherwise transfer all contracts related to the Divestiture Assets, including all supply and sales contracts, to Acquirer. Defendants must not interfere with any negotiations between Acquirer and a contracting party.

H.    At the option of Acquirer, and subject to approval by the United States in its sole discretion, on or before the date on which the Divestiture Assets are divested to Acquirer,

Defendants must enter into a contract to provide transition services for back office, human resource, and information technology services and support for the Divestiture Assets for a period of up to twelve (12) months on terms and conditions reasonably related to market conditions for the provision of the transition services. The United States, in its sole discretion, may approve one or more extensions of this contract for transition services, for a total of up to an additional six (6) months. If Acquirer seeks an extension of the term of this contract for transition services, Defendants must notify the United States in writing at least three (3) months prior to the date the contract expires. Acquirer may terminate a contract for transition services without cost or penalty at any time upon commercially reasonable notice. The employee(s) of Defendants tasked with providing these transition services must not share any competitively sensitive information of Acquirer with any other employee of Defendants.

I.      Defendants must warrant to Acquirer that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets. Following the sale of the Divestiture Assets, Defendants must not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

J.      Unless the United States otherwise consents in writing, the divestiture pursuant to Section IV or by a Divestiture Trustee appointed pursuant to Section V of this Final Judgment must include the entire Divestiture Assets, and must be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by Acquirer as part of a viable, ongoing business of the development, manufacture, and sale of Aluminum

ABS, and will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment,

    (1)    must be made to an Acquirer that, in the United States' sole judgment, has the intent and capability (including the necessary managerial, operational, technical, and financial capability) of competing effectively in the business of the design, manufacture, and sale of Aluminum ABS; and

    (2)    must be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between an Acquirer and Defendants give Defendants the ability unreasonably to raise Acquirer's costs, to lower Acquirer's efficiency, or otherwise to interfere in the ability of Acquirer to compete effectively.

K.    If any term of an agreement between Defendants and Acquirer to effectuate the divestiture required by this Final Judgment varies from a term of this Final Judgment then, to the extent that Defendants cannot fully comply with both, this Final Judgment determines Defendants' obligations.

## V.    <u>APPOINTMENT OF DIVESTITURE TRUSTEE</u>

A.    If Defendants have not divested the Divestiture Assets within the period specified in Paragraph IV(A), Defendants must immediately notify the United States of that fact in writing. Upon application of the United States, the Court will appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a Divestiture Trustee by the Court, only the Divestiture Trustee will have the right to sell the Divestiture Assets. The Divestiture Trustee will have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, at a price and on terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and will have other powers as the Court deems appropriate. Subject to Paragraph V(D) of this

Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any agents or consultants, including, but not limited to, investment bankers, attorneys, and accountants, who will be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such agents or consultants will serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      Defendants may not object to a sale by the Divestiture Trustee on any ground other than malfeasance by the Divestiture Trustee.  Objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.      The Divestiture Trustee will serve at the cost and expense of Defendants pursuant to a written agreement, on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.  The Divestiture Trustee will account for all monies derived from the sale of the assets sold by the Divestiture Trustee and all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's accounting, including fees for any of its services yet unpaid and those of any agents and consultants retained by the Divestiture Trustee, all remaining money will be paid to Defendants and the trust will then be terminated.  The compensation of the Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement that provides the Divestiture Trustee with incentives based on the price and terms of the divestiture and the speed with which it is accomplished, but the timeliness of the divestiture is paramount.  If the Divestiture Trustee and

11

Defendants are unable to reach agreement on the Divestiture Trustee's or any agents' or consultants' compensation or other terms and conditions of engagement within fourteen (14) calendar days of the appointment of the Divestiture Trustee, the United States may, in its sole discretion, take appropriate action, including making a recommendation to the Court.  Within three (3) business days of hiring any agent or consultant, the Divestiture Trustee must provide written notice of the hiring and rate of compensation to Defendants and the United States.

E.      Defendants must use their best efforts to assist the Divestiture Trustee in accomplishing the required divestiture.  The Divestiture Trustee and any agents or consultants retained by the Divestiture Trustee must have full and complete access to the personnel, books, records, and facilities of the business to be divested, and Defendants must provide or develop financial and other information relevant to such business as the Divestiture Trustee may reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges.  Defendants may not take any action to interfere with or impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After appointment, the Divestiture Trustee will file monthly reports with the United States setting forth the Divestiture Trustee's efforts to accomplish the divestiture ordered by this Final Judgment.  Reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets and will describe in detail each contact with any such person. The Divestiture Trustee will maintain full records of all efforts made to divest the Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestiture ordered by this Final Judgment within six (6) months of appointment, the Divestiture Trustee must promptly file with the Court a report setting forth: (1) the Divestiture Trustee's efforts to accomplish the required divestiture; (2) the reasons, in the Divestiture Trustee's judgment, why the required divestiture has not been accomplished; and (3) the Divestiture Trustee's recommendations.  To the extent such report contains information that the Divestiture Trustee deems confidential, such report will not be filed in the public docket of the Court.  The Divestiture Trustee will at the same time furnish such report to the United States, which will have the right to make additional recommendations to the Court consistent with the purpose of the trust.  The Court thereafter may enter such orders as it deems appropriate to carry out the purpose of this Final Judgment, which, if necessary, may include extending the trust and the term of the Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee is not acting diligently or in a reasonably cost-effective manner, the United States may recommend that the Court appoint a substitute Divestiture Trustee.

## VI.     NOTICE OF PROPOSED DIVESTITURE

A.      Within two (2) business days following execution of a definitive divestiture agreement, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States of a proposed divestiture required by this Final Judgment.  If the Divestiture Trustee is responsible for effecting the divestiture, the Divestiture Trustee also must notify Defendants.  The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously

13

identified  who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.      Within  fifteen (15) calendar days of receipt by the United States of this notice, the United States may request from Defendants, the proposed Acquirer, other third parties, or the Divestiture Trustee, if applicable, additional  information  concerning the proposed divestiture, the proposed Acquirer and other prospective Acquirer.  Defendants and the Divestiture Trustee must furnish the additional  information  requested within fifteen (15) calendar days of the receipt of the request, unless the United States provides  written agreement to a different period.

C.      Within  forty-five  (45) calendar days after receipt of the notice  or within  twenty (20) calendar days after the United States has been provided  the additional  information  requested from Defendants, the proposed Acquirer, other third parties, and the Divestiture Trustee, whichever is later, the United States must provide  written notice to Defendants and the Divestiture Trustee, if there is one, stating whether or not the United States, in its sole discretion, objects to the proposed Acquirer or any other aspect of the proposed divestiture.  If the United States provides  written notice that it does not object, the divestiture  may be consummated, subject only  to Defendants' limited  right to object to the sale under Paragraph V(C) of this Final Judgment.  Absent written notice that the United States does not object or upon objection  by the United States, a divestiture  may not be consummated.  Upon objection  by Defendants pursuant to Paragraph V(C), a divestiture  by the Divestiture  Trustee may not be consummated unless approved by the Court.

D.      No information  or documents obtained pursuant to Section VI may be divulged  by the United States to any person other than an authorized  representative  of the executive branch of the

14

United States, except in the course of legal proceedings to which the United States is a party (including grand-jury proceedings), for the purpose of evaluating a proposed Acquirer or securing compliance with this Final Judgment, or as otherwise required by law.

E.      In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Persons submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." See 28 C.F.R. § 16.7(b).

F.      If at the time a person furnishes information or documents to the United States pursuant to Section VI, that person represents and identifies in writing information or documents for which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and marks each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States must give that person ten calendar days' notice before divulging the material in any legal proceeding (other than a grand-jury proceeding).

## VII.    FINANCING

Defendants may not finance all or any part of Acquirer's purchase of all or part of the Divestiture Assets made pursuant to this Final Judgment.

## VIII.    HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, Defendants must take all steps necessary to comply with the Hold Separate Stipulation and Order entered by the Court on January 9, 2020, or any superseding Order. Defendants will take no action that would jeopardize the divestiture ordered by the Court.

## IX.    AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the Order Stipulating to Modification of the Order to Hold Separate Assets and proposed Final Judgment in this matter, and every thirty (30) calendar days thereafter until the divestiture required by this Final Judgment has been completed, Defendants must deliver to the United States an affidavit, signed by Defendants' Vice President, Strategy and Sustainability and General Counsel, describing the fact and manner of Defendants' compliance with this Final Judgment. Each affidavit must include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, an interest in the Divestiture Assets, and must describe in detail each contact with such persons during that period. Each affidavit also must include a description of the efforts Defendants have taken to solicit buyers for and complete the sale of the Divestiture Assets, and to provide required information to prospective Acquirers. Each affidavit also must include a description of any limitations placed

16

by Defendants on information provided to prospective Acquirers. If the information set forth in the affidavit is true and complete, objection by the United States to information provided by Defendants to prospective Acquirers must be made within fourteen (14) calendar days of receipt of the affidavit.

B.      Within twenty (20) calendar days of the filing of the Order Stipulating to Modification of the Order to Hold Separate Assets and proposed Final Judgment in this matter, Defendants must deliver to the United States an affidavit that describes in reasonable detail all actions Defendants have taken and all steps Defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. Defendants must deliver to the United States an affidavit describing any changes to the efforts and actions outlined in Defendants' earlier affidavits filed pursuant to Section IX within fifteen (15) calendar days after the change is implemented.

C.      Defendants must keep all records of all efforts made to preserve and divest the Divestiture Assets until one year after the divestiture has been completed.

## X.      COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment, or of related orders such as a Hold Separate Stipulation and Order, or of determining whether this Final Judgment should be modified or vacated, and subject to any legally-recognized privilege, from time to time authorized representatives of the United States, including agents retained by the United States, must, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and reasonable notice to Defendants, be permitted:

(1)     access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of

17

> all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and
>
> (2)    to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews must be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants must submit written reports or respond to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment.

C.    No information or documents obtained pursuant to Section X may be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    In the event of a request by a third party for disclosure of information under the Freedom of Information Act, 5 U.S.C. § 552, the Antitrust Division will act in accordance with that statute, and the Department of Justice regulations at 28 C.F.R. part 16, including the provision on confidential commercial information, at 28 C.F.R. § 16.7. Defendants submitting information to the Antitrust Division should designate the confidential commercial information portions of all applicable documents and information under 28 C.F.R. § 16.7. Designations of confidentiality expire ten years after submission, "unless the submitter requests and provides justification for a longer designation period." See 28 C.F.R. § 16.7(b).

E.      If at the time that Defendants furnish information or documents to the United States

pursuant to Section X, Defendants represent and identify in writing information or documents for

which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil

Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of

protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," the United States

must give Defendants ten (10) calendar days' notice before divulging the material in any legal

proceeding (other than a grand jury proceeding).

## XI.      LIMITATIONS ON REACQUISITION

Defendants may not reacquire any part of or any interest in the Divestiture Assets during

the term of this Final Judgment.

## XII.      RETENTION OF JURISDICTION

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the

Court at any time for further orders and directions as may be necessary or appropriate to carry

out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and

to punish violations of its provisions.

## XIII.      ENFORCEMENT OF FINAL JUDGMENT

A.      The United States retains and reserves all rights to enforce the provisions of this Final

Judgment, including the right to seek an order of contempt from the Court. Defendants agree

that in a civil contempt action, a motion to show cause, or a similar action brought by the United

States regarding an alleged violation of this Final Judgment, the United States may establish a

violation of this Final Judgment and the appropriateness of a remedy therefor by a preponderance

19

of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B.      This Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore the competition the United States alleged was harmed by the challenged conduct.  Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face.  In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C.      In an enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with other relief that may be appropriate.  In connection with a successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved before litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as all other costs, including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

D.      For a period of four (4) years following the expiration of this Final Judgment, if the United States has evidence that a Defendant violated this Final Judgment before it expired, the United States may file an action against that Defendant in this Court requesting that the Court order: (1) Defendant to comply with the terms of this Final Judgment for an additional term of at least four years following the filing of the enforcement action; (2) all appropriate contempt

remedies; (3) additional relief needed to ensure the Defendant complies with the terms of this Final Judgment; and (4) fees or expenses as called for by Section X.

## XIV.    EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment will expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestiture has been completed and the continuation of this Final Judgment no longer is necessary or in the public interest.

## XV.    PUBLIC INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest. The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16, including by making available to the public copies of this Final Judgment, the Competitive Impact Statement, comments thereon, and the United States' responses to comments. Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.


Date: _8/26/2020_____

                                          _s/Christopher A. Boyko_____

                                          United States District Judge

21